UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

R & R PACKAGING, INC.
d/b/a R & R SOLUTIONS PLAINTIFF

v. No. 5:20-CV-05095

EVENFLO COMPANY, INC. DEFENDANT

**OPINION AND ORDER**

Before the Court are Plaintiff R & R Packaging, Inc.'s ("R&R") motion (Doc. 58) to compel discovery and for sanctions, and R&R's supplement (Doc. 74) thereto. Defendant Evenflo Company, Inc. ("Evenflo") filed an opposition (Doc. 80) to R&R's motion. R&R filed a reply (Doc. 90), and Evenflo filed a surreply (Doc. 93). The Court has reviewed the unredacted versions of all these filings and the exhibits attached thereto. As further explained below, R&R's motion and supplement are GRANTED.

**I. Background**

This is a patent dispute over technology that alerts users when a child may have been forgotten in a car seat. R&R alleges that it invented such a technology for its "Forget Me Not" system and, in 2013 and 2014, shared sensitive technical information about that technology's design and function with Evenflo while negotiating the possibility of Evenflo licensing or purchasing that technology from R&R. *See* Doc. 2, ¶¶ 11–14. R&R had pending patent applications for this technology during those negotiations. *Id.* R&R claims that after disclosing this information to Evenflo, Evenflo broke off contact and then released a product of its own, called "SensorSafe," despite being aware of R&R's then-pending patent applications. After investigation, R&R eventually filed this lawsuit, accusing Evenflo's SensorSafe system of

infringing United States Patent Numbers 9,189,943 ("the 943 patent") and 9,424,728 ("the 728 patent").

This case has been continuously plagued by discovery disputes. The instant motion was filed by R&R on November 5, 2021. It identified many different areas of contention, which have subsequently narrowed somewhat through the parties' ongoing negotiations. This opinion and order will only address the topics of dispute which the Court understands, from the briefing and from the parties' email communications with the Court, remain unresolved.

## II. Legal Standard

Under the Federal Rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Importantly, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Federal district courts are vested with very wide discretion in determining the scope of discovery. *See, e.g.*, *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 344 (8th Cir. 2012) (observing that "appellate review of a district court's discovery rulings is both narrow and deferential," and that the Eighth Circuit "will not reverse a district court's discovery ruling absent a gross abuse of discretion resulting in fundamental unfairness in the trial of the case" (internal alterations and quotation marks omitted)); *cf. Pat. Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010) (noting that the Federal Circuit applies the law of the regional circuit when reviewing a district court's discovery rulings in patent cases).

## III. Discussion

Before describing the specific topics of dispute in the instant discovery motion, it will be helpful to provide some broader context and to make certain initial rulings. All but a few of the

instant discovery disagreements revolve around one of two clusters of issues: (1) the latest iteration of Evenflo's SensorSafe system, called "SensorSafe 3.0"; and (2) Evenflo's relationships with a third-party company called "Seibert Williams Glass LLC" ("SWG") and a Czech company called "CookieLab."

With respect to SensorSafe 3.0, the dispute basically boils down to Evenflo's claim that R&R's complaint and infringement contentions only formally accuse SensorSafe versions 2.0 and 2.1 of infringement. Evenflo says that discovery into version 3.0 is not proper unless and until R&R amends its complaint to add version 3.0 as an accused product. The Court has reviewed both R&R's complaint and its initial infringement contentions regarding the 943 patent.[1] Neither of these documents limits R&R's accusations to a particular product version. Rather, R&R's initial infringement contentions repeatedly identify the "Accused Product" as the "SensorSafe System," *see* Doc. 74-7 *passim*, and R&R's complaint describes the "Accused Products" as "child safety seat systems . . . that are equipped with a 'SensorSafe' device or buckle," *see* Doc. 2, ¶¶ 17–18. Although version 3.0 apparently was still in development when the complaint was filed, the complaint's "Accused Products" section explicitly includes product versions that were then currently under development. *See id.* at ¶ 17 ("Defendant has *and is making* . . . child safety seat systems that infringe the claimed subject matter . . . ." (emphasis added)). The objection that SensorSafe 3.0 is not an accused product is not a valid basis for Evenflo to withhold production of materials that are otherwise responsive to R&R's discovery requests.

As for SWG and CookieLab: it appears from the parties' briefing that Evenflo partnered with SWG to develop its SensorSafe products, and with CookieLab to develop a SensorSafe

[1] The Court was unable to review R&R's initial infringement contentions regarding the 728 patent, because neither party filed a copy of that document as an exhibit to its briefing on the instant motion.

mobile phone application. R&R is seeking certain materials and information possessed by SWG and CookieLab, and one of the core disputes here concerns whether Evenflo has the ability and obligation to produce those things. Basically, Evenflo's position is that if R&R wants material from SWG and CookieLab then R&R must seek it directly from SWG and CookieLab, while R&R's position is that it should be able to obtain these materials from Evenflo because Evenflo has both the legal and the practical ability to get them from SWG and CookieLab.

R&R has presented a consulting agreement between Evenflo and SWG plainly stating that "[a]ny intellectual property developed or conceived by" SWG relating to SensorSafe "shall be promptly disclosed to Evenflo in writing and shall be the sole property of Evenflo." *See* Doc. 60-1, p. 3, ¶ 9. R&R further points out that Evenflo's senior SensorSafe product manager, Sharon Ruggieri, testified in her deposition that she considers SWG's cofounder, Mike Williams, to be an Evenflo employee[2] and that he provides information to her about SensorSafe whenever she asks. *See* Doc. 58-26, pp. 9–10 (internally numbered 27:15–28:3). Likewise, Mr. Williams testified in his own deposition that SWG's work for Evenflo is Evenflo's property and that "if Evenflo asked me for a document, I would provide it." *See* Doc. 60-7, pp. 3–4 (internally numbered 31:4–32:20).

Similarly, the Service Level Agreement ("SLA") between CookieLab and Evenflo's affiliate, Cybex GmbH, lists Ms. Ruggieri (with her Evenflo email address) as one of the "authorized personnel from the Client Side." *See* Doc. 81-11, p. 10 (internally numbered 9). The Framework Services Agreement under which the SLA was concluded states that all technical materials prepared by CookieLab in connection with SensorSafe "will become and remain Client's

[2] The Court recognizes that the consulting agreement between Evenflo and SWG contemplates an independent contractor relationship rather than one of employer-employee. *See* Doc. 60-1, p. 3, ¶ 10. Regardless, Ms. Ruggieri's testimony is strong evidence of Evenflo's practical ability to obtain SensorSafe materials from SWG on demand.

sole property." *See* Doc. 81-10, p. 9, § 9.3. It also requires CookieLab to "guarantee that the Client has . . . access" to that material "at any time," and to "provide to Client all such material or documentation" within seven days of "a request by Client." *See id.* Just as with SWG, Ms. Ruggieri also testified in her deposition that "I have every right to ask for" the SensorSafe source code that CookieLab developed "and be sent the files." *See* Doc. 58-26, pp. 12–13 (internally numbered 30:3–31:23). Ms. Ruggieri, of course, is an employee of Evenflo and could easily be directed to do this by Evenflo's CEO. *See id.* at p. 13 (internally numbered 31:6–31:23).

Federal Rule of Civil Procedure 34(a)(1) authorizes a requesting party to seek production of documents that are "in the responding party's possession, custody, or control." For purposes of this Rule, "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *see also U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005); 8B CHARLES A. WRIGHT, ARTHUR R. MILLER, & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2210 (3d ed. Apr. 2021 update) ("Inspection can be had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy."). In light of the foregoing evidence, the Court finds that SWG's and CookieLab's SensorSafe materials are within Evenflo's "control" for purposes of Rule 34. The objection that Evenflo somehow lacks the legal authority or practical ability to obtain SensorSafe documents or information from SWG or CookieLab is not a valid basis for Evenflo to withhold production of materials that are otherwise responsive to R&R's discovery requests.

With this context, and having made these preliminary rulings, the Court will now proceed to consider each specific discovery dispute that remains unresolved, of which the Court

understands there to be nine. The Court will identify these nine topics of dispute using the same language the parties have adopted, which is:

A. Documents in the possession of SWG and Cookielab, including source code;

B. Documents in the "SensorSafe 3.0" folder;

C. Evenflo's process gate documents related to SensorSafe;

D. Certain information related to Evenflo's affiliates, including financial information related to sales of the accused products and licenses/licensing discussions with its affiliates;

E. Documents in the "app development" folder;

F. Information sufficient to identify how Evenflo accounts for payments to SWG for royalty payments it makes to SWG for sales made by its affiliates, including licenses and license negotiations between Evenflo and its affiliates;

G. Information related to the elimination of the dongle as part of SensorSafe 3.0, including cost savings achieved by its elimination and customer dissatisfaction with the dongle;

H. Quarterly reports and sales information provided to Verizon; and

I. Sales forecasts for products incorporating SensorSafe.[3]

Each of those topics will be discussed separately below. Then the Court will conclude by addressing a few other miscellaneous issues.

---

[3] The Court understands that two additional topics identified in the earlier briefing on the instant motion have subsequently been resolved, namely: "Bill of materials that show cost of SensorSafe products manufactured in the U.S."; and "Bill of materials showing cost for each SensorSafe product manufactured in China."

**A. Documents in the possession of SWG and Cookielab, including source code**

Although R&R labeled this topic expansively to concern documents that "include[e] source code," the parties' briefing on this topic does not explicitly discuss any materials other than source code. R&R propounded multiple interrogatories and requests for production on Evenflo which explicitly requested SensorSafe source code. *See, e.g.*, Doc. 58-4, pp. 9–10 (interrogatories 9 and 10); Doc. 58-3, p. 12 (RFPs 23 and 23).[4] Evenflo says it should not have to produce the SensorSafe source code because it does not maintain the source code and is not familiar with how it operates; instead, Evenflo takes the position that R&R should obtain this material directly from SWG and CookieLab, which are the entities who possess and understand the source code. Evenflo points out that SWG has already produced source code for SensorSafe 1.0, 2.0, and 2.1 in response to a subpoena from R&R, and that SWG has produced a subject-matter expert to testify about this material. As for CookieLab, Evenflo repeatedly emphasizes that R&R never requested CookieLab's source code before filing its original motion to compel. Evenflo claims that even now it still does not know which portions of the source code R&R wants, and that it should not have to educate itself on the code and produce only those portions "relevant" to R&R's infringement allegations.

The Court has already found above that SWG's and CookieLab's SensorSafe materials are within Evenflo's "control" for purposes of Rule 34. To whatever extent Evenflo does not understand SensorSafe source code sufficiently well to discern which portions are relevant to R&R's infringement allegations, then it is Evenflo's obligation either to acquire a sufficient

[4] Evenflo seems to argue in some of its briefing that because certain R&R requests for production made only a "passing reference" to "source code" this should somehow mean the requests were not actually made. *See* Doc. 80, pp. 13–14 (internally numbered as pp. 9–10). This line of argument is wholly unpersuasive. As already noted and cited above, R&R's discovery requests repeatedly and explicitly seek production of SensorSafe source code.

understanding of its own product to identify and produce responsive materials or else to instruct persons at SWG and CookieLab who already possess such knowledge to identify and produce the responsive materials. To the extent Evenflo's objection is one of proportionality or undue burden, the Court rejects this argument because Evenflo has not made any concrete showing as to the time or expense that would be involved in producing SensorSafe source code. "A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018). Finally, to whatever extent Evenflo's objection is that it should not have to produce source code for SensorSafe 3.0 because the latter is not an accused product, the Court rejects this objection for the same reasons already given in its preliminary rulings earlier in Section III of this opinion.

Evenflo is ordered to immediately produce all SensorSafe source code responsive to R&R's discovery requests. Upon completing this task, Evenflo is further ordered to formally verify to R&R that all such responsive materials have been produced.

**B. Documents in the "SensorSafe 3.0" folder**

During Ms. Ruggieri's deposition, R&R learned that she maintains a folder dedicated to SensorSafe 3.0 materials on her computer. R&R contends that the materials Ms. Ruggieri described in this folder are encompassed within R&R's previously-propounded discovery requests and that Evenflo should produce them. Evenflo objects to producing the materials in this folder on the grounds that SensorSafe 3.0 is not an accused product and that producing these materials would be unduly burdensome and disproportionate to the needs of this case.[5] The Court rejects

[5] Evenflo also argues that it should not have to produce these materials because "R&R has never formally requested Ms. Ruggieri's SensorSafe 3.0 folder in an RFP under Rule 34." (Doc. 80, p. 15) (internally numbered as p. 11). The Court rejects this argument. When R&R requested

the former objection for the reasons already given above. The Court rejects the latter objection because, as with the source code previously discussed, Evenflo has not made any particularized showing as to the time or expense that producing the contents of this folder would entail. To this latter point the Court notes that, as a possible alternative to producing the entire folder, "R&R requested that Evenflo provide a listing of the documents in the folder so that [R&R] could request specific files or documents," which request Evenflo apparently also rejected. Evenflo is ordered either to immediately produce a complete list of all contents of the SensorSafe 3.0 folder to R&R so that R&R may request specific files or documents, or else to simply produce all non-privileged contents of the SensorSafe 3.0 folder to R&R.

**C. Evenflo's process gate documents related to SensorSafe**

It appears from the parties' briefing that Evenflo has agreed to produce these materials except for information related to SensorSafe 3.0, on the grounds that the latter is not an accused product. The Court overrules this objection for the reasons already given above, and orders production of process gate documents related to SensorSafe 3.0 in a manner consistent with the agreement already reached by the parties with respect to earlier versions of SensorSafe.

**D. Certain information related to Evenflo's affiliates, including financial information related to sales of the accused products and licenses/licensing discussions with its affiliates**

Certain affiliates of Evenflo also sell SensorSafe products pursuant to a sublicensing arrangement involving SWG. The contours of this arrangement are not perfectly clear to the Court,

---

production of "[a]ll Documents relating to the initial, current, *and future designs or versions* of any Accused Product," *see* Doc. 58-3, p. 12 (RFP 24) (emphasis added), it could no more reasonably be expected to tell Evenflo where to look on Evenflo's own electronic file system architecture for responsive electronic files than to direct Evenflo to the particular closets, basements, and filing cabinets where Evenflo should look for responsive physical papers. This is information that was in Evenflo's possession and not within R&R's possession.

but it appears from the parties' briefs and exhibits to work something like this: SWG gave Evenflo an exclusive license to all proprietary rights in a 2012 patent application relating to its SensorSafe technology, which Evenflo sublicensed to some of its affiliates. Those affiliates pay royalties to Evenflo on their SensorSafe sales, and Evenflo in turn pays royalties to SWG on those same sales.

R&R is seeking discovery from Evenflo regarding these SensorSafe sales by its affiliates and its licenses and licensing discussions with them. R&R contends this information is relevant to the issue of damages in this case. Evenflo objects to this on several grounds.

First, Evenflo argues SensorSafe sales by its affiliates are irrelevant because those affiliates are not named parties to this suit. This argument fails because a defendant in a patent suit may be liable for infringements committed by nonparties if the defendant actively induced those infringements. *See* 35 U.S.C. § 271(b). "A finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009) (internal alterations omitted). Inducement also "requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* (internal alterations omitted). A plaintiff alleging inducement must show actual knowledge on the part of the inducing defendant that the induced acts constitute patent infringement—a requirement which can be satisfied by showing that the defendant "subjectively believed there was a high probability" that the plaintiff's product was patented, that the defendant "took deliberate steps to avoid knowing that fact, and that it therefore willfully blinded itself to the infringing nature of" the induced entity's sales. *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766, 771 (2011). R&R alleges that Evenflo's SensorSafe products infringe the patents at issue in this case, and that at all relevant times Evenflo

knew of the patents or the applications that led to their issuance. Information regarding sales of these same products by Evenflo's affiliates pursuant to agreements with Evenflo is therefore obviously relevant to the issue of inducement in this case.

Alternatively, Evenflo argues that "the only relevant financial information stemming from any such alleged [induced] infringement would still be *Evenflo's* financial information. R&R could not claim damages for revenues that never flowed to Evenflo; thus, it is not entitled to any affiliates' financial information alone." (Doc. 80, p. 20 (internally numbered 16)) (emphasis in original). Evenflo cites no authority in support of this proposition, and the Court does not see how it could be correct. The typical measure of damages for patent infringement is the plaintiff's lost profits—not the defendant's unjust enrichment. Damages for patent infringement are calculated "without regard to the question whether the defendant has gained or lost by his unlawful acts." *See King Instruments Corp. v. Perego*, 65 F.3d 941, 948 (Fed. Cir. 1995) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964)). Evenflo is ordered to provide R&R non-privileged information regarding its affiliates' SensorSafe sales and licensing agreements, to the extent that such information is responsive to R&R's discovery requests and within Evenflo's "control" for purposes of Rule 34.

**E. Documents in the "app development" folder**

The parties represent that their positions on Ms. Ruggieri's "app development" folder are the same as their positions on her "SensorSafe 3.0" folder discussed above. Accordingly, the Court orders that Evenflo either immediately produce a complete list of all contents of the app development folder to R&R so R&R may request specific files or documents from it, or else simply produce all non-privileged contents of the app development folder to R&R.

**F. Information sufficient to identify how Evenflo accounts for payments to SWG for royalty payments it makes to SWG for sales made by its affiliates, including licenses and license negotiations between Evenflo and its affiliates**

The parties' positions on this topic are the same as their positions on the information related to Evenflo's affiliates discussed in Subsection III.D above. Accordingly, the Court's ruling on this topic is the same as for the topic addressed in Subsection III.D.

**G. Information related to the elimination of the dongle as part of SensorSafe 3.0, including cost savings achieved by its elimination and customer dissatisfaction with the dongle**

Evenflo does not concede that R&R is entitled to the information sought in this category of requests, but Evenflo stated in its response brief that it has nevertheless agreed to produce these materials and that this production renders this particular dispute moot. R&R replies that this dispute will be moot only once Evenflo verifies that the single document it has produced responsive to this request is in fact the only such responsive document. Evenflo's surreply does not address the matter of verification. If it has not already done so, then Evenflo is ordered to immediately either verify that the document it has produced responsive to this request is in fact the only such responsive document, or else to inform R&R of what documents responsive to this request have not yet been produced and of when they will be produced.

**H. Quarterly reports and sales information provided to Verizon**

The posture of this particular dispute is nearly identical to that of the last one: Evenflo says it has rendered this dispute moot by agreeing to produce this information; R&R replies that this dispute is not moot, because notwithstanding Evenflo's promise to produce these materials it still has not in fact actually produced them; and Evenflo's surreply says nothing about this topic. If it has not already done so, then Evenflo is ordered to immediately either produce these materials in

accordance with its previous agreement to do so, or else to inform R&R of what documents responsive to this request have not yet been produced and of when they will be produced.

**I. Sales forecasts for products incorporating SensorSafe**

R&R's RFP number 38 asks Evenflo to produce "[a]ll Documents relating to the market for the monitoring system for child safety seats and Accused Product, including any market studies, market forecasts, sales forecasts, industry reports or consumer surveys (whether conducted by You or on Your behalf)." (Doc. 58-3, p. 15 (internally numbered 14)). Evenflo has resisted making this production, but it is difficult for the Court to understand exactly what Evenflo's position is on this topic. On the one hand, Evenflo seems to imply that no such forecasts exist. On the other hand, Evenflo seems to concede that in fact the forecasts do exist, but only in a form that Evenflo claims does not qualify as a "document" for purposes of Rule 34.

Of course the Court will not order production of materials that do not exist. But to whatever extent these materials *do* exist, the Court flatly rejects Evenflo's latter argument. Evenflo asserts, again without citation to any authority, that "any forecasts kept in a database are not 'documents,' which is all that R&R requested in RFP No. 38." (Doc. 80, p. 22 (internally numbered 18)). However, Rule 34(a)(1) explicitly authorizes parties to request production of "any designated documents *or electronically stored information*—including writings, drawings, graphs, charts, . . . *and other data or data compilations*—stored in *any medium* from which information can be obtained . . . ." (emphasis added). The Rule could hardly be more clear that forecasts kept in a database are indeed discoverable materials. Further, R&R's requests for production specifically define "Document," for purposes of those requests, as meaning "any and all items or sources of information within the meaning of Rule 34, whether . . . hard copy or electronic/digital." *See* Doc. 58-3, p. 3, ¶ 2. If Evenflo has SensorSafe sales forecasts in a database, then those materials

obviously fall within the scope of R&R's discovery requests and are just as obviously permissible targets of discovery under the Federal Rules.

As for whether such forecasts even exist: the Court does not have sufficient information before it to make a finding one way or another. But it will order that Evenflo must produce the forecasts to R&R if they do exist. To that end, the Court will make a couple of observations.

First, although Evenflo states that "[Jonathan] Conaway testified there were no updated forecasts after the accused SensorSafe feature was first released," *see* Doc. 80, p. 21 (internally numbered 17), the Court does not understand Mr. Conaway's testimony to have been that sales forecasts were not *performed* for subsequent versions of SensorSafe. Rather, the Court understands Mr. Conaway to have testified that the sales forecasts "would not have *changed*" from one SensorSafe version to the next. *See* Doc. 84, p. 5 (internally numbered 43:6–43:7) (emphasis added). Furthermore, Mr. Conaway immediately followed that testimony up with the caveat that "it would have probably *gone down*, if anything, just based on the current performance of the product." *See id.* (internally numbered 43:2–43:22) (emphasis added). It appears to the Court that Mr. Conaway believed or assumed sales forecasts *were* performed for each subsequent version of SensorSafe, and that the forecasts for later versions predicted their performance in the marketplace would be roughly on par with, or even somewhat worse than, that of the earlier versions. Perhaps the Court is misunderstanding Mr. Conaway's testimony, or perhaps Mr. Conaway's memory was simply incorrect on this point. But, again, if those forecasts were performed and if Evenflo still possesses them, then Evenflo is ordered to produce them—regardless of whether they are kept in a database.

Second, the Court notes that Evenflo stated in its briefs that it "does not keep records of sales forecasts *in the ordinary course of business*," (Doc. 80, p. 21 (internally numbered 17))

(emphasis added), and that it "has searched for and is not aware of *historical records* of sales forecasts and projections," (Doc. 93, p. 4 (internally numbered 3)) (emphasis added). The Court is not sure what to make of the italicized language here. If Evenflo no longer possesses any SensorSafe sales forecasts, then it should say so clearly and directly. If Evenflo does possess any SensorSafe sales forecasts, then it is ordered to immediately produce them to R&R.

**J. Other miscellaneous issues**

In addition to the topics addressed above, the parties briefed several other issues of which the Court is unsure whether they were subsequently resolved without the need for Court intervention. In particular, R&R originally complained that Evenflo had not provided complete interrogatory responses, a verification to its responses, and metadata required under the Stipulated ESI Order. Evenflo responded that these things could have been easily dealt with if R&R had engaged in a good-faith meet and confer process, and that Evenflo either has subsequently or will soon provide the requested responses/materials, thus rendering these particular disputes moot.

R&R then replied that Evenflo "*still* has not provided responses to interrogatories and has still not provided a verification page for those interrogatories it answered over one year ago. The issue is not moot." (Doc. 90, p. 2 (internally numbered 1)) (emphasis in original). R&R went on to dispute Evenflo's characterization of the meet and confer process, but concluded that "[r]egardless, it is undisputed that R&R has tried multiple times to address this issue for over a year," and that "[r]ather than argue about the sufficiency of the meet and confer process, Evenflo should provide the responses as it is obligated to do (and says it will do)." *See id.* R&R also replied that Evenflo has not produced the required metadata, and that Evenflo is conflating "author" information and "custodian" information. *See id.*

Evenflo then represented in its surreply that it "has supplemented its responses to R&R's interrogatories," and that the parties have also resolved the dispute over metadata after R&R's reply was filed. However, Evenflo's surreply did not say whether it has provided a verification page for its interrogatory responses. If Evenflo has not yet provided that verification page, then it is ordered to do so immediately.

Finally, the Court notes that R&R requested in its motion that the Court "sanction[] Evenflo for the unnecessary costs and expenses R&R has incurred in bringing this motion and arising from Evenflo's false representations to R&R," and "admonish[] Evenflo for its cavalier approach to discovery and mak[e] clear that further abuses may result in severe sanctions, including the Court striking Evenflo's Answer." (Doc. 60, p. 2 (internally numbered as 1)). The Court does not find that Evenflo made false representations to R&R or that it has taken a cavalier approach to discovery. The Court recognizes that many of R&R's original discovery requests were rather broad in scope, and knows that broad discovery requests tend to trigger broad objections. The Court also appreciates that the parties were able to narrow the scope of the issues in dispute as the briefing on R&R's motion progressed.

However, the Court also cannot overlook that it had to spend far more time working to resolve the issues raised in this motion than is typically necessary on discovery motions, and that on every single issue that was ultimately reached in this opinion and order, the Court ruled more or less in R&R's favor. Under such circumstances, the Court has no difficulty concluding that R&R is entitled under Rule 37(a)(5) to recover its reasonable expenses incurred in making this motion, including attorney fees, from Evenflo. The specific amount of that recovery will need to be briefed in a separate motion, which R&R should file no later than fourteen days from today.

## IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff R & R Packaging, Inc.'s motion (Doc. 58) to compel discovery and for sanctions, and its supplement (Doc. 74) thereto, are both GRANTED.

IT IS FURTHER ORDERED that if R&R wishes to file any motion for the recovery of its expenses and fees incurred in bringing this motion to compel, then it must do so **no later than April 25, 2022**.

IT IS SO ORDERED this 11th day of April, 2022.

/s/ P. K. Holmes, III

P.K. HOLMES, III
U.S. DISTRICT JUDGE