**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

R & R PACKAGING, INC.
D/B/A R & R SOLUTIONS,

       Plaintiff,

vs.

 EVENFLO COMPANY, INC.,

       Defendant.

Case No. 5-20-cv-05095

JUDGE PK HOLMES III

**JURY TRIAL DEMANDED**

### EVENFLO COMPANY INC.'S SECOND AMENDED ANSWER
### TO R & R PACKAGING INC.'s COMPLAINT FOR PATENT INFRINGEMENT
### AND SECOND AMENDED COUNTERCLAIMS
### FOR DECLARATORY JUDGMENT OF INVALIDITY

 Evenflo Company, Inc. ("Evenflo") hereby answers the allegations in R & R Packaging, Inc. d/b/a R & R Solutions' ("R & R") Complaint and makes the following Counterclaims. Any allegations in R & R's Complaint which are not specifically admitted below are denied.

### THE PARTIES

 1. Evenflo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, denies each allegation therein.

 2. Admitted.

 3. Admitted.

### JURISDICTION AND VENUE

 4. Admitted, except that Evenflo denies that R & R is entitled to any relief.

 5. Admitted.

6.     Denied.

7.     Evenflo admits that it has a regular and established place of business in this district but denies the remainder of the allegations in this paragraph.

## THE PATENTS-IN-SUIT

8.     Evenflo admits that the face of U.S. Patent No. 9,189,943 (the "'943 Patent") states an issue date of November 17, 2015, is entitled "Child Safety Seat Alarm," and names Amy Rambadt, John Rambadt, and David Tanner as inventors. Evenflo admits that a copy of the '943 Patent appears to be attached to Plaintiff's original Complaint as Exhibit A.

9.     Evenflo admits that the face of United States Patent No. 9,424,728 ("'728 Patent") states an issue date of August 23, 2016, is entitled "Child Safety Seat Mobile Alarm and Method Therefor," and name Amy Rambadt, John Rambadt, David Tanner, Ken Kehler, and Joseph Strickland as inventors. Evenflo admits that a copy of the '728 Patent appears to be attached to Plaintiff's original Complaint as Exhibit B.

## FACTUAL ALLEGATIONS

10.     Evenflo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, denies each allegation therein.

11.     Evenflo is without information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the same.

12.     Evenflo is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and, therefore, denies each allegation therein.

13.     Evenflo admits that it had conversations with certain people associated with Plaintiff in 2013-14 and that, at that time, those individuals claimed to have filed patent applications. Evenflo denies all remaining allegations in this paragraph.

14.     Evenflo admits that certain people associated with Plaintiff demonstrated products to Evenflo personnel. Evenflo denies all remaining allegations of this paragraph.

15.     Evenflo is without information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the same. Furthermore, Evenflo states that the claims and/or drawing figures of the '943 and '728 Patents speak for themselves.

16.     Denied.

## THE ACCUSED PRODUCTS

17.     Denied.

18.     Denied. Evenflo admits that it equips certain car seats with a SensorSafe product.

19.     Evenflo admits that the photos appear to be of Evenflo's Litemax product.

20.     Evenflo admits that the photo appears to be of Evenflo's SensorSafe chest clip.

21.     Evenflo is unclear as to what is meant by "a monitoring system for child safety" and therefore denies the allegations of paragraph 21.

22.     Evenflo admits that its SensorSafe equipped products include a plug that interfaces with a car's OBDII port, a chest clip that communicates with the plug, and that Evenflo has an application ("app") that is available for download related thereto. Evenflo denies all remaining allegations of paragraph 22.

23.     Evenflo admits that there is an app related to its SensorSafe product available for download on the Internet and that it promotes consumers to use the app with car seats equipped with the SensorSafe product.

24.     Evenflo admits that the image provided is related to the operation of its SensorSafe product and states that what is shown in the image speaks for itself.

25.     Denied.

26.     Denied.

27.     Evenflo admits that the SensorSafe products' related app can provide mobile phone alerts. Evenflo is unclear as to the meaning of "and so on" and thus denies any allegations related thereto. Evenflo admits that the image appears to be a screenshot from a mobile phone and that what is shown therein speaks for itself. Evenflo denies the remaining allegations of paragraph 27.

28.     Evenflo admits that the SensorSafe products' related app can provide mobile phone alerts. Evenflo admits that the images appear to be screenshots from a mobile phone and that what is shown therein speaks for itself. Evenflo denies the remaining allegations of paragraph 28.

29.     Evenflo admits that the SensorSafe products' related app can provide mobile phone alerts. Evenflo states that the image of the video, and the video itself, speak for themselves. Evenflo denies the remaining allegations of paragraph 29

30.     Denied.

## DEFENDANT'S ALLEGED INFRINGING ACTS

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

## COUNT I – ALLEGED PATENT INFRINGEMENT OF U.S. PAT. NO. 9,189,943

36.     Evenflo incorporates by reference and restates its answers as set forth in paragraphs 1-35 above.

37.     Evenflo admits that the face of the '943 Patent states an issue date of November 17, 2015, is entitled "Child Safety Seat Alarm," and names Amy Rambadt, John Rambadt, and David Tanner as inventors. Evenflo admits that a copy of the '943 Patent appears to be attached to Plaintiff's original Complaint as Exhibit A.

38.     Evenflo is without information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the same.

39.     Denied.

40.     Denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

## COUNT II – ALLEGED PATENT INFRINGEMENT OF U.S. PAT. NO. 9,424,728

46.     Evenflo incorporates by reference and restates its answers as set forth in paragraphs 1-45 above.

47.     Evenflo admits that the face of the '728 Patent" states an issue date of August 23, 2016, is entitled "Child Safety Seat Mobile Alarm and Method Therefor," and names Amy Rambadt, John Rambadt, David Tanner, Ken Kehler, and Joseph Strickland as inventors. Evenflo admits that a copy of the '728 Patent appears to be attached to Plaintiff's original Complaint as Exhibit B.

48.     Evenflo is without information sufficient to form a belief as to the truth of the allegations in this paragraph and, therefore, denies the same.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

## PRAYER FOR RELIEF

56.     Evenflo denies that R & R is entitled to any relief whatsoever, including any of the relief requested in paragraphs a – g of its prayer for relief.

## DEMAND FOR A JURY TRIAL

57.     Evenflo joins in Plaintiff's demand for a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

58.     Evenflo makes the following affirmative defenses to R & R's allegations.

## FIRST AFFIRMATIVE DEFENSE

59.     The Complaint fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

60.     Each asserted claim of the Patents-in-Suit is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## THIRD AFFIRMATIVE DEFENSE

61.     To the extent that R & R and any predecessors in interest to the Patents-in-Suit failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287,

or otherwise give proper notice that Evenflo's actions allegedly infringe the Patents-in-Suit, Evenflo is not liable to R & R for the acts alleged to have been performed before it received actual notice that it was allegedly infringing the Patents-in-Suit.

## FOURTH AFFIRMATIVE DEFENSE

62.     To the extent that R & R asserts that Evenflo indirectly infringes, either by contributory infringement or inducement of infringement, Evenflo is not liable to R & R for the acts alleged to have been performed before Evenflo knew that its actions would cause indirect infringement.

## FIFTH AFFIRMATIVE DEFENSE

63.     R & R's attempted enforcement of the Patents-in-Suit against Evenflo is barred by one or more of the equitable doctrines of laches, estoppel, acquiescence, waiver, and unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

64.     All of R&R's claims of infringement under the doctrine of equivalents are barred under the Ensnarement Doctrine.

## COUNTERCLAIMS

Evenflo incorporates by reference its above responses as if fully set forth herein. In accordance with Rule 13 of the Federal Rules of Civil Procedure, Evenflo asserts the following counterclaims against R&R.

**THE PARTIES**

1.     Counterclaim-Plaintiff Evenflo Company, Inc. ("Evenflo") is a Delaware corporation having its principal place of business at 3131 Newmark Drive, Miamisburg, OH 45342.

2.     On information and belief, based on its pleadings in this action, R&R Packaging Inc. d/b/a/ R&R Solutions ("R&R") is an Arkansas corporation with a principal place of business at 601 1st Ave NW, Gravette, AR 72736.

**JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction over these counterclaims under 28 U.S.C. §§ 1331, 1338(a), the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. An actual controversy exists between R&R and Evenflo regarding the non-infringement, invalidity, and unenforceability of U.S. Patent Nos. 9,189,943 (the "'943 Patent") and 9,424,728 (the "'728 Patent") (collectively, the "Asserted Patents").

4.     R&R has consented to this Court's personal jurisdiction by commencing this action for patent infringement against Evenflo in this Court, as set forth in the Complaint (Dkt. 2).

5.     By virtue of filing this action, R&R has consented that venue is permissible in this District pursuant to at least 28 U.S.C. §§ 1391(c) and 1400.

**COUNT ONE**
**DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 9,189,943**

6.     Evenflo restates and realleges Paragraphs 1-5 of its Counterclaims as if fully rewritten herein.

7.     At least claims 1, 2, 4, and 5 of the '943 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 et seq., including but not limited to Sections 102 and 103.

8.     More specifically, at least claims 1, 2, 4, and 5 of the '943 Patent are invalid under 35 U.S.C. § 102 and/or 103 for reasons including, but not limited to, the disclosures of U.S Pat. No. 8,659,414 to Schuk ("Schuk," Ex. A) and U.S. Publ. No. US 2009/0079557 to Miner ("Miner," Ex. B). Both prior art references clearly predate the priority date of the '943 Patent, and most importantly, clearly anticipate the asserted claims of the '943 Patent based upon Plaintiff's own infringement arguments as set forth in its Complaint and Initial Infringement Contentions for the '943 Patent. As such, as shown in the '943 Invalidity Claim Charts of Schuk (Ex. C) and Miner (Ex. D), respectively, at least claims 1, 2, 4, and 5 of the '943 patent are invalid under 35 U.S.C. § 102 and/or 103.

9.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

10.     A judicial declaration is necessary and appropriate so that Evenflo may ascertain its rights regarding the '943 Patent.

## COUNT TWO
## DECLARATORY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 9,424,728

11.     Evenflo incorporates the foregoing paragraphs of its Answer by reference as though fully set forth herein.

12.     At least claims 3 -8 of the '728 Patent are invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more of 35 U.S.C. §§ 100 et seq., including but not limited to Sections 102 and 103.

13.     More specifically, at least claims 3-8 of the '728 Patent are invalid under 35 U.S.C. § 102 and/or 103 for reasons including, but not limited to, the disclosure of US 2012/0232749 A1

entitled "Systems and Methods for Indicating the Presence of a Child in a Vehicle," published on September 13, 2012, and filed on February 9, 2012, naming Gregory B. Schoenberg and Robert S. Steffen as inventors ("the Schoenberg Reference") a true and correct copy of which is attached hereto as Exhibit E. Schoenberg predates the priority date of the '728 Patent and anticipates the asserted claims of the '728 Patent based upon Plaintiff's own infringement arguments. As shown in the '728 Invalidity Claim Chart of Schoenberg, attached hereto as Exhibit F, at least claims 3 - 8 of the '728 patent are invalid under 35 U.S.C.§ 102 and/or 103.

14.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

15.     A judicial declaration is necessary and appropriate so that Evenflo may ascertain its rights regarding the '728 Patent.

16.     Evenflo reserves the right to amend, substitute, and supplement its Answer and Counterclaims.

**COUNT THREE**
**UNENFORCEABILITY OF THE ASSERTED PATENTS DUE TO**
**INEQUITABLE CONDUCT**

**I.    The Asserted Patents**

17.     U.S. Patent Application No. 14/035,410 was filed in the  United States Patent and Trademark Office ("USPTO") on September 24, 2013, and issued as the '943 Patent on November 17, 2015.

18.     The '943 Patent is titled "Child Safety Seat Alarm."

19.     The '943 Patent claims priority to the provisional application numbered 61/704,811, filed with the USPTO on September 12, 2012.

20.     The '943 Patent also claims priority to the provisional application numbered 61/788,037, filed with the USPTO on March 15, 2013.

21.     The '943 Patent is entitled to a priority date no earlier than September 12, 2021.

22.     U.S. Patent Application No. 14/284,004 was filed in the USPTO on May 21, 2014, and issued as the '728 Patent on August 23, 2016.

23.     The '728 Patent is a continuation-in-part of the '943 Patent.

24.     The '728 Patent is titled "Child Safety Seat Mobile Alarm and Method Therefor."

25.     The '728 Patent claims priority to the provisional application numbered 61/704,811, filed with the USPTO on September 12, 2012.

26.     The '728 Patent also claims priority to the provisional application numbered 61/788,037, filed with the USPTO on March 15, 2013.

27.     The '728 Patent also claims priority to the provisional application numbered 61/969,574, filed with the USPTO on March 24, 2014.

28.     The claims of the '728 Patent contain subject matter that is not contained in, or disclosed by, the '943 Patent, including: i) "a portable device … having a computing platform for inputting a user's data"; ii) "wherein said user data is selected from the group comprising: vehicle location data, vehicle information data, vehicle image data, parent name data, child name data, child age data, child gender data, child medical data, and child image data"; ii) "transmitting said user's data to at least one user-selected contact" iv) "transmitting an alarm notification to at least one user-selected contact, said alarm notification selected from the group comprising:  a pre-recorded voice message, an email message, and a text message"; v) "wherein said at least one portable device … transmits said user data to at least one user-selected contact if said programmed distance range is exceeded by said at least one portable device, said user data selected from the

group comprising vehicle data, vehicle image data, parent name data, child name data, child age data, child gender data, child medical data, and child image data"; vi) "wherein said alarm signal includes at least one alarm selected from the group comprising an audible alarm, a visual alarm, and a vibration alarm"; vii) "wherein said alarm notification transmitted to at least one user-selected contact is selected from the group comprising: a pre-recorded voice message, an email message, and a text message"; and viii) "wherein said alarm notification is further transmitted to a social media network account profile."

29. The '728 Patent is entitled to a priority date no earlier than March 24, 2014.

**II.  U.S. Patent No. 8,816,845 to Hoover et al.**

30. U.S. Patent Application No. 13/221,557 (the "'557 patent application") was filed in the USPTO on August 30, 2011.

31. The '557 patent application was published as U.S. Patent Publication No. 2013/0049955 (the "'955 patent publication") on February 28, 2013.

32. The '557 patent application issued as U.S. Patent No. 8,816,845 (the "'845 Patent") on August 26, 2014.

33. The '845 patent is titled "Method and System for Generating an Alert Based on Car Seat Use Detection."

34. The '845 patent was assigned to Verizon Patent and Licensing, Inc. ("Verizon").

35. The '955 patent application is prior art to the asserted '943 Patent under at least 35 U.S.C. § 102(e).

36. The '845 Patent is prior art to the asserted '943 Patent under at least 35 U.S.C. § 102(e).

37.    The '955 patent application is prior art to the asserted '728 Patent under at least 35 U.S.C. § 102(b) and (e) (pre-AIA) or 35 U.S.C § 102(a) (post-AIA).

38.    The '845 Patent is prior art to the asserted '943 Patent under at least 35 U.S.C. § 102(b) and (e) (pre-AIA) or 35 U.S.C § 102(a) (post-AIA).

39.    The '955 patent publication and the '845 Patent disclose each limitation of the '943 patent such that it would have rendered claims 1, 2, 4, and 5 of the '943 Patent unpatentable had it been disclosed during prosecution of the '557 patent application.

40.    Exhibit G [Hoover '943 Chart] is incorporated herein and outlines, claim by claim, how asserted claims 1, 2, 4, and 5 of the '943 patent are invalid over the '955 patent publication in view of itself and the state of the art.

41.    The '955 patent publication also discloses all limitations of the '728 patent such that it would have rendered claims 3, 5, 6, and 7 of the '728 Patent unpatentable had the '955 patent publication been disclosed during prosecution of the '728 patent application.

42.    Exhibit H [Hoover '728 Chart] is incorporated herein and outlines, claim by claim, how asserted claims 3, 5, 6, and 7 of the '728 patent are invalid over the '955 patent publication in view of itself and the state of the art.

III.    **Amy Rambadt Obtained Actual Knowledge of the '955 Patent Publication**

43.    Amy Rambadt, president and co-owner of R&R, is a named inventor on the '943 Patent and the '728 Patent.

44.    On information and belief, in July 2014, Kim Campbell, an R&R employee, directed his daughter, Christian Campbell, to conduct research on technology and patents related to child safety seats that alert caregivers of a child left behind in a vehicle.

45.     On July 28, 2014, Mr. Campbell forwarded an email to Ms. Rambadt containing the results of Ms. Campbell's research. *See* Ex. I (filed under seal).

46.     One of the links included in the July 28, 2014 email was an article posted to Fierce Wireless on or about May 9, 2013, titled "Verizon Patents Car Seat That Alerts Parent if Child is Forgotten in Car" (the "Fierce Wireless article"). *See* Ex. I (filed under seal); Ex. J. The article disclosed the '557 patent application and '955 patent publication, and provided a link to those filings. *See* Ex. J.

47.     The Fierce Wireless article generally described the patent disclosure:

> According to the patent filing, the system would detect via a sensor when a child is in a car seat and, based on the proximity of the sensor to the mobile device, would send a notification to the device." Ex. D. The car seat's wireless sensor would also be part of a system that could determine conditions inside of the vehicle, or a combination of those things. That information would then be sent to the mobile device, and alarm messages would be sent with increasing intensity based on how often the notification was sent to the device.

Ex. J.  The article also stated that the '955 patent publication "was filed in August 2011." *Id.*

48.     After receiving the email, on information and belief, Ms. Rambadt reviewed each of the links and provided feedback on each of the child car seat alert systems disclosed therein. *See* Ex. I (filed under seal). On information and belief, Ms. Rambadt reviewed the Fierce Wireless article as well as the '955 patent publication on July 28, 2014. *See id.*

49.     Ms. Rambadt had actual knowledge of the '955 patent publication prior to receiving the notice of allowance for the '943 and '728 patents.

50.     On information and belief, Ms. Rambadt was aware of the technology described in the '955 patent publication.

## IV. Amy Rambadt Did Not Disclose the '955 Patent Publication During Prosecution of the Asserted Patents

51.     Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the USPTO, which includes a duty to disclose to the USPTO all information known to that individual to be material to patentability. Manual of Patent Examining Procedure ("MPEP") § 2001, 37 C.F.R. § 1.56. The duty to disclose information exists with respect to each pending claim until the claim is cancelled, withdrawn from consideration, or allowed.

52.     As a named inventor for the Asserted Patents, Ms. Rambadt owed the Patent Office a duty of candor throughout the entire course of the Asserted Patents' prosecutions to disclose all facts and information material to the patentability of the claims in the Asserted Patents' applications.

53.     Ms. Rambadt had knowledge of the '955 patent publication prior to the issue date of the Asserted Patents. *See supra* ¶¶ 43-50.

54.     Ms. Rambadt had knowledge of the '955 patent publication while she still had a duty of candor to the Patent Office with respect to the applications that were issued as the '943 Patent and the '728 Patent.

55.     Ms. Rambadt did not disclose the existence of the '955 patent publication at any time during the prosecution of the Asserted Patents.

## V. The '955 Patent Publication Disclosed Information That Would Have Been Material to the Prosecution of the '943 Patent

56.     The '955 patent publication is relevant and material to the issued claims of the '943 Patent. *See* Ex. G [Hoover '955 Chart – '943 Patent].

57.     The '955 patent publication is not cumulative to other references considered by the Patent Office during the examination of the applications that issued as the '943 Patent.

58.     The '943 Patent application was assigned to Examiner Thomas Mullen at the U.S. Patent and Trademark Office.

59.     On February 6, 2015, Examiner Mullen mailed a Non-Final Office Action that rejected all claims of the '943 Patent application. *See* Ex. K.  In addition to other grounds, Examiner Mullen rejected the claims as unpatentable as obvious in view of Miner alone, Miner in view of Thomas, and Miner in view of Quinonez. *Id.* at 7-11.

60.     The patent applicants responded on May 6, 2015. *See* Ex. L.  To overcome Examiner Mullen's obviousness rejections, applicants amended Claims 1 and 11 to include a "latching pin" limitation and wrote that "Claims 1 and 11 [had] been amended to claim specifically the latching portion of the transceiver configured to secure to the buckle of the child safety seat," and that "Miner, Thomas and Quinonez do not teach this structure . . . ." Ex. L at 12. The '943 Patent was issued on November 17, 2015.

61.     In its infringement contentions, R&R maps the latching pin element in the asserted claims to one or more components of the SensorSafe chest clip. Ex. M at 27-30.

62.     The '955 patent publication discloses, expressly and inherently, sensors for indicating the presence of a child that can be integrated into and fastened into any component of a car seat. *See* Ex. G.  Indeed, Figure 1 of the '955 patent publication shows a child in a car safety seat secured with a lap buckle and chest clip. *Id.*

63.     Had Examiner Mullen known about the '955 patent publication, particularly under R&R's current view of the scope of the claims, the applicants' amendment related to the latching pin element would not have been allowed. Further, because the '955 patent publication anticipates

and/or renders obvious each claim in the '943 Patent, Examiner Mullen would have rejected the '943 Patent in its entirety based on the '955 patent publication alone, or in combination with any of the other prior art considered during the '943 Patent's prosecution. *See* Ex. G.

64. On information and belief, Ms. Rambadt knew and appreciated the relevance and materiality of the '955 patent publication on the patentability of the claimed inventions that issued in the '943 Patent.

65. Ms. Rambadt knew about the '955 patent publication before the '943 Patent issued, and failed to disclose the material information contained in the '955 patent publication to Examiner Mullen during the entirety of the '943 Patent's examination.

66. Based on the information discussed herein, and on information and belief, the single most reasonable inference to be drawn is that Ms. Rambadt withheld this material information with the specific intent to deceive the U.S. Patent and Trademark Office into improperly issuing the '943 Patent.

67. The failure to disclose the material information discussed herein renders the '943 Patent unenforceable.

## VI. The '955 Patent Publication Disclosed Information That Would Have Been Material to the Prosecution of the '728 Patent

68. The '955 patent publication is relevant and material to the issued claims of the '728 Patent. *See* Ex. H [Hoover '955 Chart – '728 Patent].

69. The '955 patent publication is not cumulative to other references considered by the Patent Office during the examination of the applications that issued as the '728 Patent.

70. The '728 Patent application was assigned to Examiner Thomas Mullen at the U.S. Patent and Trademark Office.

71.     On July 20, 2015, Examiner Mullen mailed a Non-Final Office Action that rejected all claims of the '728 Patent application. *See* Ex. N.  In addition to other grounds, Examiner Mullen rejected the claims as unpatentable as obvious in view of Miner alone and Miner in view of Thomas. *Id.* at 8-11.

72.     The patent applicants responded on October 19, 2015. *See* Ex. O.  To overcome Examiner Mullen's 103(a) rejections, applicants amended Claims 1, 8, and 12 "to claim specifically the input mechanism for user data" and argued that "Miner and Thomas do not teach this input . . . ." *Id.* at 9. The '728 Patent was issued on October 23, 2016.

73.     Claiming a platform that had "an input for inputting user data" was the material reason the '728 Patent was found patentable over the examiner's obviousness rejections.

74.     The '955 patent publication expressly discloses a computing platform for inputting user data. *See, e.g.*, Ex. H at 78-82. As one example, the '955 patent publication expressly states:

> In addition, user devices 101 a-101 n may facilitate various input means for receiving and generating information, including touch screen capability, keyboard and keypad data entry, voice-based input mechanisms and the like. Any known and future implementations of user devices 101 are applicable.

*Id.* at 78 (citing '955 patent publication at [0025]).

75.     Had Examiner Mullen known about the '955 patent publication, the applicants' amendment related to the "inputting user data" element would not have been allowed. Further, because the '955 patent publication anticipates and/or renders obvious each claim in the '728 Patent, Examiner Mullen would have rejected the '728 Patent in its entirety based on the '955 patent publication alone, or in combination with any of the other prior art considered during the '728 Patent's prosecution. *See* Ex. H.

76.     On information and belief, Ms. Rambadt knew and appreciated the relevance and materiality of the '955 patent publication on the patentability of the claimed inventions that issued in the '728 Patent.

77.     Ms. Rambadt knew about the '955 patent publication before filing the '728 Patent's application, and failed to disclose the material information contained in the '955 patent publication to Examiner Mullen during the entirety of the '728 Patent's examination.

78.     Based on the information discussed herein, and on information and belief, the single most reasonable inference to be drawn is that Ms. Rambadt withheld this material information with the specific intent to deceive the U.S. Patent and Trademark Office into improperly issuing the '728 Patent.

79.     The failure to disclose the material information discussed herein renders the '728 Patent unenforceable.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant and Counterclaimant Evenflo, Inc. prays that judgment be entered against Plaintiff and Counterclaim Defendant as follows:

a)  Dismissal of R&R's Complaint with prejudice;

b)  Judgment against R&R and in favor of Evenflo;

c)  A declaration that R&R take nothing against Evenflo by its claims in this action;

d)  A declaration that each asserted claim in the '943 Patent is invalid;

e)  A declaration that each asserted claim in the '728 Patent is invalid;

f)  A declaration that Evenflo does not infringe, under any theory, any valid claim of the Asserted Patents that may be enforceable;

g) A declaration that any and all asserted claims of the '943 Patent and '728 Patent are unenforceable;

h) Declare this case exceptional under 35 U.S.C. § 285;

i) Award Evenflo its costs and expenses, including reasonable attorneys' fees, incurred in this action; and

j) Award Evenflo such other and further relief as this Court deems just and proper.

Date: October 7, 2022

Respectfully submitted,

*/s/ Maxwell C. McGraw*
Maxwell C. McGraw (pro hac vice)
Mo. Bar No. 70237
Lauren E. Douville (pro hac vice)
Mo. Bar No. 64819
B. Trent Webb (pro hac vice)
Mo. Bar No. 40778
Aaron E. Hankel (pro hac vice)
Mo. Bar No. 60816
Shook, Hardy & Bacon L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
ldouville@shb.com
bwebb@shb.com
ahankel@shb.com
mmcgraw@shb.com

Emily A. Neal, AR2003087
Conner Eldridge, AR2003155
Eldridge Brooks Partners
5100 West JB Hunt Dr., Ste. 840
Rogers, Arkansas 72758
Telephone: (479) 553-7678
Facsimile: (479) 553-7553
conner@eldridgebrooks.com
emily@eldridgebrooks.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2022, the foregoing Motion for Leave was filed through the Court's electronic filing system, which serves counsel for all parties who are registered to participate as identified on the Notice of Electronic Filing (NEF).

Emily A. Neal